**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RASHEANA PROCTOR,<br>as Special Administrator of the Estate of<br>HENRY PROCTOR, Deceased, and<br>RENDA JOHNSON-PROCTOR, | ) | Case No. |
| Plaintiffs, | ) | Judge |
| v. | ) | Magistrate Judge |
| CITY OF CHICAGO HEIGHTS, and<br>Detention Aides ESTOCK and KEVIN KUTTA, | ) | |
| Defendants. | ) | **JURY DEMANDED** |

## COMPLAINT

NOW COMES the Plaintiffs, RASHEANA PROCTOR, as Special Administrator of the Estate of Henry Proctor, and RENDA JOHNSON-PROCTOR, complaining of the Defendants the City of Chicago Heights, and Detention Aides ESTOCK and KEVIN KUTTA, and in support of their complaint, state as follows:

### INTRODUCTION

1. This action is brought pursuant to 42 U.S.C. Section 1983 to redress the deprivation under the color of law of Henry Proctor's rights under the Eighth Amendment, related state law claims, and state law claims of his spouse, Renda Johnson-Proctor.

### JURISDICTION AND VENUE

2. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331 and 1367.

3. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district.

## THE PARTIES

4. Plaintiffs are a residents of the Northern District of Illinois. Plaintiff Rasheana Proctor is the Administrator of the Estate of Henry Proctor and sues on behalf of her father, Henry Proctor, who at the time of his death was a detainee at the Chicago Heights Police Department lockup facility.

5. Defendant City of Chicago Heights is a municipal corporation duly incorporated under the laws of the State of Illinois.

6. Defendants City of Chicago Heights employees Estock and Kevin Kutta (hereinafter the "individual defendants") were at all relevant times hereto employed by the City of Chicago Heights acting under color of law and within the scope of their employment. These defendants are being sued in their individual capacity.

## FACTUAL ALLEGATIONS

7. On or about December 19, 2020, the Decedent Henry Proctor entered the City of Chicago Heights lockup facility.

8. On or about December 20, 2020, at around 4:35 a.m., the Decedent Henry Proctor was found deceased in the City of Chicago Heights lockup facility.

9. Henry Proctor died in the City of Chicago Heights lockup facility from alcohol withdrawal and symptoms related to alcoholism.

10. Alcohol withdrawal and alcoholism are objectively serious medical conditions.

11. At all relevant times in the City of Chicago Heights lockup facility, Henry Proctor exhibited signs and symptoms of alcohol withdrawal and symptoms related to

alcoholism. The signs and symptoms exhibited by Henry Proctor were so obvious that any layperson would know that Henry Proctor required medical treatment.

12. From 3:00 p.m.-11:00 p.m. on December 19, 2020, Defendant Estock was the detention aide responsible for supervising individuals housed in the lockup facility, including Henry Proctor.

13. From 11:00 p.m. on December 19, 2020, until 3:00 p.m. on December 20, 2020, Defendant Kutta was the detention aide responsible for supervising individuals housed in the lockup facility, including Henry Proctor.

14. Soon after entering the lockup on December 19, 2020, Henry Proctor began demonstrating clear and obvious signs of alcohol withdrawal.

15. Pursuant to written policy of the City of Chicago Heights, detention aides are required to conduct checks on individuals confined to the City of Chicago Heights lockup every thirty minutes, at a minimum.

16. The purpose of the written policy is in part to make sure that individuals confined in the lockup do not require any medical attention, and detention aides like Estock and Kutta are so trained.

17. To facilitate keeping track of the thirty-minute checks, the City of Chicago Heights requires in a written policy that detention aides fill out a form verifying that the checks were conducted every thirty minutes.

18. Yet, the City of Chicago Heights maintains an undocumented official policy of conducting no checks whatsoever in contravention of the written policy.

19. In furtherance of the official policy, detention aides falsify forms that indicate the thirty-minute checks have been completed.

20. The official policy is so widespread as to put policymakers on notice that it exists, and at all relevant times prior to the death of Henry Proctor, the policy was followed by employees of the City of Chicago Heights responsible for supervising individuals in the lockup.

21. Pursuant to the official policy, on December 19, 2020, Defendant Estock did not conduct checks every thirty minutes.

22. Pursuant to the official policy on December 20, 2020, Defendant Kutta did not conduct checks every thirty minutes.

23. Pursuant to the official policy, Defendants Estock and Kutta made false reports about their failure to conduct required checks.

24. On December 20, 2020, at approximately 4:30 a.m., Defendant Kutta found Henry Proctor unresponsive in the lockup.

25. At the time of his discovery, Henry Proctor was stiff because of rigor mortis and cold to the touch, which indicate that Henry Proctor had been dead for hours.

26. At the time of Henry Proctor's discovery, neither Estock nor Kutta had observed signs of life in Henry Proctor for hours.

27. As a result of Henry Proctor's discovery, aided by other law enforcement and employees and agents of the City of Chicago Heights, Defendants began to coverup the circumstances of Henry Proctor's death.

28. As part of the coverup, the conspirators, including the individual Defendants, attempted to make their knowledge of Henry Proctor's objectively serious symptoms disappear.

29. As part of the coverup, despite actual knowledge of the serious symptoms of alcohol withdrawal exhibited by Henry Proctor, Defendants Estock and Kutta and other employees of the City of Chicago Heights claimed to observe no symptoms of illness.

30. As part of the coverup, Defendants Estock and Kutta falsified the form that they had conducted thirty minute checks.

31. As part of the coverup, supervisors failed to make reports about the official policy of conducting no checks every thirty minutes.

32. As part of the coverup, in response to investigators and supervisors, Defendants Estock and Kutta knowingly made false reports that they had conducted checks every thirty minutes on December 19, 2020 and December 20, 2020 respectively.

33. As part of the coverup, individuals wrongfully denied requests for information from Henry Proctor's family about the circumstances of his death.

34. As part of the coverup, the City of Chicago Heights conducted a deficient and defective investigation into the circumstances of Henry Proctor's death.

35. The deficient and defective investigation was intentionally conducted in that manner by the highest ranking officials in the police department, deliberately ignores the widespread practice of failing to conduct checks on detainees, and attempts to circumvent any acknowledgement or analysis thereof in an effort to cover up for its police employees.

36. The purpose of the coverup was to prevent Henry Proctor's family and Cook County State's Attorney investigators from learning the truth about Henry Proctor's death and the official policy of failing to check on detainees.

37. To that end, the coverup was successful, as family only learned of the circumstances related to Henry Proctor's death recently.

38. Upon learning thereof, the family setup an Estate, which was approved by the Circuit Court on July 17, 2023.

39. Alcohol addiction is recognized as a brain disorder that is caused by the use of alcohol.

40. Prolonged use of alcohol can lead to severe injury and death.

41. Long term alcohol abuse leads to physical dependence, which causes withdrawal. Withdrawal is a physical illness that results when an individual stops using alcohol. Alcohol withdrawal can deadly, if not identified and treated properly.

42. Symptoms of alcohol withdrawal typically begin within the first 24 hours after alcohol usage stops and can include: tremors, irritability, anxiety, agitation, delirium tremens, hallucinations, and seizures.

43. Symptoms of alcohol withdrawal tend to increase in severity if left untreated. An individual suffering from untreated alcohol withdrawal typically exhibits a wide range of severe symptoms, including but not limited to: diarrhea, cramping, nausea and vomiting, tremors, agitation, and other signs and symptoms.

44. Early treatment of alcohol withdrawal alleviates symptoms and prevents progression of symptoms and death.

45. Alcohol withdrawal is a very common condition that, when recognized and treated, rarely results in death.

46. It is well known to all levels of medical professionals as well as prison and jail staff that if left untreated, or improperly treated, alcohol withdrawal can result in severe injury and/or death.

47. While in custody from December 19, 2020 to December 20, 2020, Henry Proctor's condition continued deteriorating and exhibited obvious alcohol withdrawal symptoms to the extent that it was readily apparent to the individual defendants that he was in serious need of medical attention. Despite the fact that the individual defendants knew or should have known of Henry Proctor's serious medical needs, they ignored facts that Henry Proctor was exhibiting obvious withdrawal symptoms and failed to take the necessary action to provide Henry Proctor with proper medical care.

48. As a direct result of Defendants' misconduct, Henry Proctor experienced unnecessary pain and suffering, culminating in his death.

49. As a direct result of Defendants' misconduct, Henry Proctor suffered injury, including without limitation, extreme pain and suffering caused by his untimely death.

50. Henry Proctor's next of kin and wife, Renda Johnson-Proctor, suffered loss of Henry's consortium, companionship, and society as a direct result of Defendants' misconduct.

## COUNT I
## DELIBERATE INDIFFERENCE – 42 U.S.C. §1983

51. Each paragraph of this Complaint is incorporated as if set forth herein.

52. Defendants, at all relevant times hereto, were responsible for providing detainees, including the decedent, with adequate medical care at the City of Chicago Heights lockup.

53. Henry Proctor, at all relevant times hereto, was an inmate at the City of Chicago Heights lockup and was subject to Defendants' care and medical services.

54. Henry Proctor had a clearly established right under the Eighth and Fourteenth Amendment to the U.S. Constitution to be free from deliberate indifference to his known serious medical needs and to receive proper and adequate medical care while incarcerated and under the custody and control of the individual Defendants at the City of Chicago Heights lockup.

55. Each individual Defendant knew or should have known of this clearly established right at the time of Henry Proctor's death.

56. At all times relevant to the allegations in this Complaint, each individual Defendant knew of and disregarded the excessive risks associated with Henry Proctor's serious and life-threatening medical condition.

57. Nevertheless, with deliberate indifference to Henry Proctor's constitutional right to adequate medical care, Defendants knowingly failed to examine, treat, and/or care for Henry Proctor's worsening condition. They did so despite their knowledge of Mr. Henry Proctor's serious medical needs, thereby placing him at risk of serious physical harm, including death. Therefore, Defendants knew or were aware that Henry Proctor faced a substantial risk of harm and disregarded this excessive risk by failing to take measures to reduce it.

58. All of the deliberately indifferent acts of each individual Defendant were conducted within the scope of their official duties and employment.

59. The acts or omissions of each individual Defendant were the legal and proximate cause of Henry Proctor's death.

60. The acts and omissions of each individual Defendant caused Henry Proctor's damages in that he suffered extreme physical and mental pain while he was in Defendants' custody for over 24 hours.

61. The City of Chicago Heights has a widespread de facto practice of denying adequate medical care to detainees who suffer from symptoms of withdrawal.

62. Because decedent was a detainee, decedent was not free to obtain his own medical care or treat his own symptoms. The City of Chicago Heights had an obligation to provide adequate medical care.

63. The widespread practice of denying adequate medical care includes the practice of failing to properly supervise detainees who suffer from withdrawal.

64. The failure to properly supervise decedent and provide adequate medical care was the moving force behind decedent's death.

65. The intentional actions or inactions of each individual Defendant as described herein, as well as the widespread practices of the City of Chicago Heights deprived Henry Proctor of rights secured by the Constitution of the United States of America, and caused him other damages.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against the individual Defendants, jointly and severally, awarding compensatory and punitive damages, as well as costs and attorneys' fees.

**COUNT II: 42 U.S.C. § 1983 – Failure to Train, Supervise, or Discipline Against City of Chicago Heights**

66. Plaintiff realleges each of the foregoing paragraphs as if fully set forth here.

67. At all times relevant, Henry Proctor enjoyed and possessed a right under the Fourth, Eighth, and Fourteenth Amendment to receive necessary medical treatment.

68. Henry Proctor's death was proximately caused by policies and practices of the City of Chicago Heights.

69. Specifically, at all relevant times, there existed a widespread practice at the City of Chicago Heights under employees, including officers, detention aides, and medical personnel, commonly fail or refuse to:

(1) Properly examine a detainee with a serious medical need;

(2) Provide proper medication to a detainee with a serious medical condition;

(3) Respond to detainees who requested medical attention or medication or asked to see a doctor;

(4) Respond to detainees who exhibited obvious signs of a serious medical condition or illness;

(5) Deny or delay detainees' access to specialists who exhibited obvious signs of a serious medical condition or illness; and

(6) Deny or delay appropriate testing to diagnose with specific detainees' ailment when he or she exhibited obvious signs of a serious medical condition or illness.

(7) Investigate allegations of deliberate indifference;

(8) Interview accused employees about their misconduct in a timely manner;

(9) Examine whether the City's practices are widespread;

(10) Discipline employees who violate relevant rules.

70. This widespread practice is allowed to flourish because the City of Chicago Heights directly encourages and is thereby the moving force behind, the very type of misconduct at issue by failing to adequately train, supervise, and control officers and personnel, and by failing to adequately punish and discipline prior instances of

similar misconduct, thus directly encouraging future abuses such as those that affected Henry Proctor.

71. In this way, the City of Chicago Heights violated Henry Proctor's rights by maintaining policies and practices that were the moving force for the foregoing constitutional violations.

72. The above-described widespread practices, so well-settled as to constitute de facto policy in the City of Chicago Heights, were able to exist and thrive because governmental policymakers with authority over the same, namely exhibited deliberate indifference to the problem, thereby effectively ratifying it.

73. Henry Proctors' injuries and death were caused by employees of the City of Chicago Heights including but not limited to the individually named Defendants, who acted pursuant to the policies and practices in engaging in the misconduct described in this Count.

WHEREFORE, pursuant to Monell v. N.Y. Dep't of Soc. Servs., 436 U.S. 658 (1978), Plaintiff demands judgment against Defendant City of Chicago Heights for compensatory damages, the costs of this action and attorneys' fees, and any such other and further relief as this Court deems equitable and just.

**COUNT III**
**WRONGFUL DEATH – 740 ILCS 180/2**

74. Each paragraph of this Complaint is incorporated as though set forth herein.

75. At all relevant times, the individual Defendants had a duty to the decedent to refrain from willful and wanton acts or omissions which could cause suffering or death to the decedent.

76. As detailed above, the Defendants breached their duty to the decedent by willfully and wantonly committing one, more, or all of the following acts or omissions:

a. Deliberately ignoring the serious medical needs of the decedent;

b. Failing to provide access to adequate medical treatment for a serious condition of which they were aware;

c. Failing to provide timely and/or proper medical treatment for a serious condition of which they were aware;

d. Otherwise acting willfully and wantonly toward decedent, in total disregard to his serious medical needs.

77. As a direct and proximate result of one or more of the foregoing grossly negligent, willful and wanton acts and/or omissions of the individual defendants, the decedent was caused to die on or about December 20, 2020.

78. The decedent left surviving him a wife and five children.

79. By reason of the death of decedent, decedent's heirs have been deprived of the support, comfort, protection, and society of the decedent.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in their favor and against Defendants, jointly and severally, awarding compensatory and punitive damages, plus costs.

**COUNT IV**
**SURVIVAL ACTION--755 I.L.C.S. 5/27-6**

80. Each paragraph of this Complaint is incorporated as though fully set forth herein.

81. As a direct and proximate result of one or more of the foregoing negligent acts and/or omissions on the part of the Defendants, the decedent was caused to experience

pain and suffering from December 19, 2020 up to the time of his death on December 20, 2020.

82. During this period of time, Henry Proctor was conscious and suffered great pain and agony, prior to his death, proximately caused by the foregoing stated acts and/or omissions of the Defendants.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in their favor and against Defendants, jointly and severally, awarding compensatory and punitive damages, plus costs.

**Jury Demand**

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

RESPECTFULLY SUBMITTED,

s/ Jared Kosoglad
111. Wabash #3166
Chicago, IL 60602
jared@jaredlaw.com
312-513-6000
jared@jaredlaw.com